UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 5:15-cv-01701-CAS(KKx) | Date | August 15, 2016 |
| Title | LIVE FACE ON WEB, LLC, v. AZ METROWAY, INC. ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**   (IN CHAMBERS) - MOTION FOR DEFAULT JUDGMENT (Dkt. 24, filed May 26, 2016)

## I.   INTRODUCTION

On August 24, 2015, plaintiff Live Face on Web, LLC ("LFOW") filed this action against defendants AZ Metroway, Inc. ("AZ") and Jose Murguia ("Murguia") for copyright infringement of plaintiff's copyrighted software code, as set forth in United States Copyright Registration No. TXu001610441. Dkt. 1. The operative complaint asserts a single claim for copyright infringement under 17 U.S.C. § 501 against defendants AZ and Murguia based upon their allegedly unauthorized copying, use, and distribution of software that is "substantially similar" to software for which plaintiff holds a copyright.[1] Compl. ¶¶ 42-44. Copies of the allegedly infringing source code and the plaintiff's source code are provided in exhibits A-1 and C, respectively, of the complaint.

Defendant AZ has not appeared or responded at any point in this action. On October 12, 2015, plaintiff filed an application for the Clerk to enter default against both defendants, and on October 15, 2015, the Clerk entered default against defendants. Also on October 15, 2015, defendant Murguia filed an answer to the complaint. Accordingly, on October 20, 2015, the Court accepted defendant Murguia's answer and ordered the Clerk to set aside the default as to defendant Murguia only. Dkt. 15.

---

[1] Plaintiff filed a proof of service of the summons and complaint as to AZ on September 7, 2015. Dkt. 10. Plaintiff filed a proof of service of the summons and complaint as to Murguia on September 17, 2015. Dkt. 11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 5:15-cv-01701-CAS(KKx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | LIVE FACE ON WEB, LLC, v. AZ METROWAY, INC. ET AL. | | |

On April 18, 2016, the Court issued an Order to Show Cause why defendant Murguia's answer should not be stricken and Murguia placed into default for (1) failure to participate in the preparation of the Joint Report, (2) failure to appear at a Court-ordered hearing on April 18, 2016, and (3) failure to comply with the Local Rules, the Federal Rules of Civil Procedure, and the orders of this Court. Dkt. 21. On May 23, 2016, having received no response from Murguia to the Court's OSC, the Court struck Murguia's answer. Dkt. 22. The Clerk thereafter entered a default judgment against Murguia on May 23, 2016. Dkt. 23.

On May 26, 2016, plaintiff filed the instant motion for default judgment against defendants.[2] Dkt. 24 ("Motion"). Through the instant motion for default judgment, plaintiff seeks the following:

1. Actual damages for willful copyright infringement pursuant to 17 U.S.C. § 504(b) in the amount of $338,567.95;

2. A permanent injunction enjoining defendant from infringing plaintiff's copyrights; and

3. Attorneys' fees in the amount of $10,371.36 + $996.65 in costs.

Id. at 1.

On June 27, 2016, the Court held oral argument on the instant motion. At oral argument, the Court provided plaintiff's counsel with a tentative ruling, and plaintiff requested leave to file supplemental briefing and evidence regarding damages. On July 11, 2016, plaintiff filed a supplement to the instant motion for default judgment in support of its assertion that defendants' alleged infringement commenced as early as March 22, 2011, and continued through at least April 20, 2015. Dkt. 29 ("Supp. to Mot.").

---

[2] Plaintiff asserts that it notified defendants AZ and Murguia of its motion for default judgment by mail on May 26, 2016. See Dkt. 24-7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 5:15-cv-01701-CAS(KKx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | LIVE FACE ON WEB, LLC, v. AZ METROWAY, INC. ET AL. | | |

## II. BACKGROUND

Plaintiff LFOW is the developer and owner of "live person" software ("LFOW Software"). LFOW registered the LFOW Software with the United States Copyright Office on December 20, 2007. Compl. ¶ 18. The LFOW Software allows a company to display a video of a walking and talking personal host who introduces a website to an online visitor. The software "seeks to enhance a web site by using a real spokesperson to capture, hold and prolong the attention of the average online visitor, enhancing the ability of the website to advertise specific goods and services." Id. ¶ 12. Generally speaking, the LFOW Software can be implemented by LFOW's customers by modifying the HTML code of the customer's website. Id. ¶ 13.

Because the LFOW software is written in JavaScript, it is possible to view the actual source code of the LFOW software through a web browser. In other words, anyone who accesses a website that has implemented the LFOW software has access to the software. Id. ¶ 15. Additionally, any website visitor can download the LFOW Software and view it on virtually any text viewer, such as Microsoft Word. Id. However, LFOW normally licenses its software to its intended customers for a license fee.

Defendants own and/or operate the website www.forkliftpartsales.com, which advertises and promotes defendants' own products. Id. ¶¶ 19-20. According to the operative complaint, defendants' website uses a web spokesperson video. Id. ¶ 21. Plaintiff avers that "in order to display the web spokesperson video on defendants' website, defendants used and distributed, without permission, therefore infringed upon, the infringing version of LFOW Software." Id. ¶ 22. In plaintiff's view, defendants "profit directly from . . . the infringement, because the use of the infringing version of the LFOW Software allows defendants to more effectively promote and sell their products and/or services." Id. ¶ 29.

## III. DISCUSSION

Granting or denying a motion for default judgment is a matter within the court's discretion. Elektra Entertainment Group, Inc. v. Bryant, 2004 WL 783123, *1 (C.D. Cal. Feb. 13, 2004); see also Sony Music Entertainment, Inc. v. Elias, 2004 WL 141959, *3 (C.D. Cal. Jan. 20, 2004). The Ninth Circuit has directed that courts consider the following factors in deciding whether to enter default judgment: (1) the possibility of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 5:15-cv-01701-CAS(KKx) | Date | August 15, 2016 |
| Title | LIVE FACE ON WEB, LLC, v. AZ METROWAY, INC. ET AL. | | |

prejudice to plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the strong policy favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986); see also Bryant, 2004 WL 783123 at *1-2.

### A. Application of the Eitel Factors

#### 1. Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (Manella, J.). Plaintiff contends that it has been injured by defendants' use of its software without paying the "applicable license fees and video production fees." Compl. ¶ 31. Given defendants' failure properly to respond and defend this suit, plaintiff would be prejudiced if denied a remedy against defendants. See PepsiCo, Inc., 238 F. Supp. 2d at 1177 (stating that plaintiffs would have no other recourse if a default judgment were not entered). As a result, the first Eitel factor weighs in favor of the entry of default judgment.

#### 2. Substantive Merits and Sufficiency of the Claim

The second and third Eitel factors assess the substantive merit of the movant's claims and the sufficiency of its pleadings, which "require that a [movant] 'state a claim on which [it] may recover.'" Id. (internal citation omitted).

To establish copyright infringement, plaintiff has the burden of showing (1) that it owns the allegedly infringed work, and (2) that defendants copied protected expression from plaintiff's work without authorization. Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996). Copying, the second prong, is demonstrated by showing (1) circumstantial (or other) evidence of defendants' access to the protected works, and (2) substantial similarity between the copyrighted and accused works. Kouf v. Walt Disney Pictures & Television, 16 F.3d 1042, 1043 n.2 (9th Cir. 1994).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'   JS-6

| Case No. | 5:15-cv-01701-CAS(KKx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | LIVE FACE ON WEB, LLC, v. AZ METROWAY, INC. ET AL. | | |

Plaintiff has demonstrated that it owns a duly registered copyright for its software. Compl. Ex. A. Plaintiff also contends that its software is accessible. "Sufficient 'access' to a copyrighted work to make it reasonably plausible that the allegedly infringing work is copied therefrom is defined as having 'an opportunity to view or to copy [a] plaintiff's work.'" Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1175 (C.D. Cal. 2001) (citing Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1172 (9th Cir. 1977)). The level of access must be a "reasonable" amount, defined as "more than a bare possibility." Three Boys Music Corp. v. Bolton, 212 F.3d 477, 481 (9th Cir. 2000). Plaintiff states that because its software is written in JavaScript, it is possible to view the actual source code of the software through a web browser, such that any website visitor can download the software and view it on any text viewer. Compl. ¶ 15. These allegations are sufficient for purposes of the instant motion. See Three Boys, 212 F.3d at 481 (holding that evidence that "the plaintiff's work has been widely disseminated" establishes access).

Plaintiff alleges that the infringing version of the software is substantially similar to plaintiff's software. Compl. ¶ 26. The allegedly infringing software contains a few pages worth of copied lines, as well as references to LFOW (e.g. "showLFOW_Video"). A finding of substantial similarity is not justified where the amount copied is so small as to be *de minimis*. See Apple Computer, Inc. v. Microsoft Corp., 821 F. Supp. 616, 623 (N.D. Cal. 1993). However, "[e]ven if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity." Baxter v. MCA, Inc., 812 F.2d 421,425 (9th Cir. 1987); see also Apple Computer, 821 F. Supp. at 624 (concluding that "quantitatively insignificant infringement may be substantial if the material is qualitatively important to plaintiff's work"). Based upon a cursory comparison of plaintiff's software source code and the allegedly infringing source code, plaintiff has sufficiently alleged substantial similarity. As a result, the second and third Eitel factors weigh in favor of the entry of default judgment.

### 3. Sum of Money at Stake in the Action

Plaintiff is seeking to recover actual damages suffered ($338,567.95) for copyright infringement. Motion at 6. Under the Copyright Act, "an infringer of copyright is liable for . . . the copyright owner's actual damages and any additional profits of the infringer." 17 U.S.C. § 504(a)(1). Although courts at times grant large sums in a default judgment,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'   JS-6

| Case No. | 5:15-cv-01701-CAS(KKx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | LIVE FACE ON WEB, LLC, v. AZ METROWAY, INC. ET AL. | | |

such substantial awards must be predicated upon the provision of acceptable proof. See FormFactor, Inc. v. Mr. Prober Technology Inc., 2015 WL 1870236, at *3 (N.D. Cal. April 23, 2015) (holding that the award of $1,670,510 in actual damages was acceptable as there were no disputed material facts and acceptable proof supported the award amount). As discussed below, sufficient proof has been provided for a sizable award (albeit not in the amount that plaintiff seeks), such that the fourth Eitel factor weighs in favor of default judgment against the defendants.

### 4. Possibility of Dispute

The next Eitel factor considers the possibility that material facts are disputed. PepsiCo, Inc., 238 F. Supp. 2d at 1177. As explained *supra*, plaintiff has adequately alleged copyright infringement in its complaint. Because defendant Murguia's answer has now been stricken, defendants have failed properly to appear in their own defense, and the Court accepts as true the material facts alleged in the operative complaint. See, e.g., id. ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages.") (internal citation omitted). Because plaintiff's factual allegations are presumed true, no factual disputes exist that would preclude the entry of default judgment. As a result, the fifth Eitel factor weighs in favor of the entry of default judgment.

### 5 Possibility of Excusable Neglect

The sixth Eitel factor considers whether defendants' default may have been the product of excusable neglect. See id. The possibility of excusable neglect here is remote. As mentioned above, defendant AZ was served on September 7, 2015. Dkt. 10. The clerk entered AZ's default on October 15, 2015. Dkt. 14. Since service, AZ has neither responded nor attempted to have its default set aside. Defendant Murguia was served on September 17, 2015. Dkt. 11. Although Murguia did respond, his answer was ultimately stricken due, in part, to Murguia's failure to attend Court-ordered hearings. Dkt. 22. Since the clerk's entering of Murguia's default on May 23, 2016, defendant Murguia has not attempted to have his default set aside. Dkt. 23. Thus, defendants' defaults were not the product of excusable neglect. Cf. id. (finding no excusable neglect where plaintiffs made numerous attempts to contact defendant to settle the matter). Consequently, this factor favors the entry of default judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 5:15-cv-01701-CAS(KKx) | Date | August 15, 2016 |
| Title | LIVE FACE ON WEB, LLC, v. AZ METROWAY, INC. ET AL. | | |

**6.     Policy in Favor of Decisions on the Merits**

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. Of course, however, pursuant to Federal Rule of Civil Procedure 55(b), "this preference, standing alone, is not dispositive." PepsiCo, Inc., 238 F. Supp. 2d at 1177 (internal citation omitted). Rule 55(a) allows a court to decide a case before the merits are heard if defendants fail to appear and defend. Defendants here failed properly to respond to plaintiff's claims. See id. ("Defendant's failure to answer plaintiffs' complaint makes a decision on the merits impractical, if not impossible."). Thus, the seventh Eitel factor does not preclude the entry of default judgment against the defendants.

**7.     Conclusion Regarding the Eitel Factors**

Aside from the policy of deciding cases on the merits, all of the Eitel factors weigh in favor of the entry of default judgment. Consequently, the Court finds it appropriate to grant the motion for default judgment against defendants AZ and Murguia.

**B.     Calculation of Damages**

**1.     Plaintiff's Request**

"The general rule of law is that upon default the factual allegations of the complaint, *except those relating to the amount of damages*, will be taken as true." Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (emphasis added). Under 17 U.S.C. § 504(a), "an infringer of copyright is liable for either

(1)     the copyright owner's ***actual damages*** and any additional profits of the infringer, . . .; or

(2)     ***statutory damages*** . . . .

17 U.S.C. § 504(a)(1)-(2) (emphasis added).

Here, plaintiff seeks only actual damages, which are generally determined by the loss in the fair market value of the copyright, as "measured by the profits lost due to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| | | | |
|---|---|---|---|
| Case No. | 5:15-cv-01701-CAS(KKx) | Date | August 15, 2016 |
| Title | LIVE FACE ON WEB, LLC, v. AZ METROWAY, INC. ET AL. | | |

infringement or the value of the use of the copyrighted work to the infringer." Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 708 (9th Cir. 2004). "[I]n situations where the infringer could have bargained with the copyright owner to purchase the right to use the work, actual damages are what a willing buyer would have been reasonably required to pay a willing seller for the plaintiff's work." Jarvis v. K2 Inc., 486 F.3d 526, 533 (9th Cir. 2007) (citation omitted). Notably, the "market approach is an objective, not a subjective, analysis," Mackie v. Rieser, 296 F.3d 909, 917 (9th Cir. 2002)—that is, "[t]he question is not what the owner would have charged, but rather what is the fair market value." On Davis v. The Gap, Inc., 246 F.3d 152, 166 (2d Cir. 2001).

Plaintiff here "only seeks its actual damages" in the amount of $338,567.95, "as calculated by the standard license fees charged by LFOW." Motion at 3. Plaintiff provides an unsigned, model copy of its Software License and Services Agreement, which charges a monthly minimum fee of $3,700 for video streaming plans, and an additional $3,200 for use of a "virtual greeter." Shcherbakov Decl. Ex. 2-A. This results in a monthly fee of $6,900, as well as an additional one-time payment of $467.95, the standard, one-time production fee for a non-custom LFOW video. Plaintiff also provides redacted copies of three executed licenses. Shcherbakov Decl., Exs. 3-5.

With respect to the duration of the alleged infringement, plaintiff's owner and CEO, Eduard Shcherbakov, avers in a declaration that "[t]he earliest archive available for [defendants' website] shows [that] the distribution of LFOW's Software" was occurring as early as March 22, 2011. Shcherbakov Decl., ¶ 10. Shcherbakov further avers that on April 20, 2015, defendants' website continued to "contain[] links to the infringing file." Id. Plaintiff has also filed a supplement to the instant motion for default judgment that contains screen captures of defendants' website with the infringing code from March 22, 2011, Supp. to Mot. at Ex. 2, through April 20, 2015, id., Ex. 85. Therefore, plaintiff posits that defendants allegedly used the infringing software for 49 months, resulting in a forgone fee for plaintiff in the amount of $338,100 (49 months x $6,900 per month). Shcherbakov Decl. Ex. 2-A. Accordingly, plaintiff seeks to recover a total of $338,567.95 [$338,100 + $467.95 one-time fee] in damages.

    **2.**  **Plaintiff's Request is Not Sufficiently Supported by the Record**

Based upon a review of the record before it, the Court cannot conclude that the damages requested by plaintiff—calculated as $6,900 per month for 49 months, plus a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'   JS-6

| Case No. | 5:15-cv-01701-CAS(KKx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | LIVE FACE ON WEB, LLC, v. AZ METROWAY, INC. ET AL. | | |

one-time payment of $467.95 —accurately reflects the actual damages occasioned by defendants' alleged infringement. The gravamen of plaintiff's complaint is that defendants copied and infringed upon the JavaScript *source code* for the LFOW software. For example, plaintiff alleges that "in order to display the web spokesperson video on Defendants' website[,]" defendant "used and distributed, without permission . . . the infringing version of the LFOW Software." Pl.'s Compl. ¶ 22. Yet plaintiff's calculation of actual damages appears to be based upon the assumption that defendant impermissibly used far more than just the LFOW software; specifically, plaintiff seeks in damages (1) a one-time payment of $467.95 to cover the production fee for a non-custom LFOW video; (2) 49 monthly payments of $3,700 for video streaming plans; and (3) 49 monthly payments of $3,200 for use of a "virtual greeter." See Shcherbakov Decl. Ex. 2-A; Pl.'s Mem. P. & A. Supp. Mot. Default J. at 4-5.

     With respect to plaintiff's one-time video production fee, plaintiff avers that this fee covers plaintiff's "provid[ing] non-custom video production services using its own facilities." Pl.'s Mot. Default J., Ex. 2. However, in its complaint, plaintiff does not allege that it produced any video for defendants. Instead, it appears that defendants used their own, independently-produced video. Thus, because plaintiff may not claim *actual* damages for harm not occasioned by defendants' alleged infringement, damages associated with plaintiff's one-time video production fee are unjustified based upon the allegations in the complaint.

     Similarly, inclusion of the monthly $3,700 video streaming fee in the monthly damages calculation appears to be unjustified. This fee is typically incurred when "LFOW's customers choose to have the copy of the LFOW Software stored on LFOW's webservers." Pl.'s Compl. ¶ 13; Pl.'s Mot. Default J., Ex. 2. Here, however, plaintiff does not allege in the complaint that defendants hosted their web spokesperson video on LFOW's servers, or that plaintiff incurred any cost related to data usage as a result of streaming or hosting defendants' video, such that inclusion of the $3,700 monthly fee in *actual* damages might be justified. Furthermore, plaintiff's calculation of $3,700 as the appropriate measure of this fee also appears to be insufficiently supported by the record. As evidence in support of the $3,700 figure, plaintiff provides an unsigned model copy of a contract. However, "the best evidence [of the value of plaintiff's services] is what a willing seller would have paid a willing buyer." McIntosh v. Northern California Universal Enterprises, Inc., 2010 WL 2698747, at *7 (E.D. Cal. July 7, 2010) (citing Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 512 (9th Cir. 1985)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 5:15-cv-01701-CAS(KKx) | Date | August 15, 2016 |
| Title | LIVE FACE ON WEB, LLC, v. AZ METROWAY, INC. ET AL. | | |

Although plaintiff here provides three redacted copies of executed contracts, all of them charge less than $3,700 per month for comparable services: (1) $3,000 per month for "Licensed Material Fees and Hosting Services for the Client," Def.'s Mot., Ex. 3; (2) $3,000 per month for "Hosting Services for [redacted] and LFOW Search Bar," Def.'s Mot., Ex. 4; and (3) $3,000 per month for "Video Streaming Plans for the Client," Def.'s Mot., Ex. 5. Thus, plaintiff's $3,700 figure appears to be insufficiently supported by the record. See McIntosh, 2010 WL 2698747, at *7 (declining to award plaintiff's requested actual damages).

     Finally, plaintiff's assertion that it is entitled to a separate "virtual greeter" licensing fee of $3,200 a month is also insufficiently supported by the record. Again, plaintiff provides an unsigned, model copy of a contract in support of its assertion that it is entitled to this fee in the actual damages calculation. However, two of the signed contracts do not contain a "virtual greeter" licensing fee, and the 2008 contract only charges $1,000 per month. See Pl.'s Mot. Default J., Ex. 3-5. Thus, plaintiff's $3,200 figure is also overly speculative.

     Ultimately, therefore, the Court finds plaintiff's estimate of actual damages, which is based upon plaintiff's "Software License and Services Agreement" contract, to be too speculative to justify an award of actual damages here. See, e.g., J & J Sports Prods., Inc. v. Lopez, 2014 WL 1320274, at *3 (N.D. Cal. Apr. 1, 2014) (declining to grant plaintiff's specific request for actual damages at default judgment on the grounds that doing so "would be entirely speculative and otherwise circumvent [p]laintiff's burden to provide the requisite factual and evidentiary predicate for a damages award"); Taylor Made Golf Co. v. Carsten Sports, Ltd., 175 F.R.D. 658, 662 (S.D. Cal. 1997) ("Because awards can only compensate actual injuries, they cannot be either speculative or punitive."); Hupp v. Jones, 474 Fed. App'x. 601, 601-02 (9th Cir. 2012) ("The district court did not abuse its discretion in awarding a default judgment of $1,000 in nominal damages for Hupp's defamation claim, because Hupp did not sufficiently prove that he was entitled to a greater amount of damages."); cf. House v. Kent Worldwide Machine Works, Inc., 359 Fed. App'x. 206, 207 (2d Cir. 2010) ("[E]ven when the defendant defaults and is not present to object, damages must be based on admissible evidence.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'   JS-6

| Case No. | 5:15-cv-01701-CAS(KKx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | LIVE FACE ON WEB, LLC, v. AZ METROWAY, INC. ET AL. | | |

### 3. The Court Finds Statutory Damages to be a More Appropriate Measure of Damages Here

Of course, a plaintiff may elect statutory damages for copyright infringement regardless of the adequacy of evidence offered of his actual damages or the amount of defendant's profits. Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc., 259 F.3d 1186 (9th Cir. 2001). This is "[b]ecause awards of statutory damages serve both compensatory and punitive purposes . . . ." Los Angeles News Service v. Reuters Television Intern., Ltd., 149 F.3d 987, 996 (9th Cir. 1998). The availability of such statutory damages "ensures there will always be an avenue open to sanction an infringer and vindicate the statutory policy of discouraging infringement." Id. Although plaintiff has not elected to seek statutory damages here, the Court looks to the Copyright Act's provision regarding statutory damages as a guide for calculating the appropriate damage award in this case.

As one district court explained, the consideration of "[s]tatutory damages [is] particularly appropriate in a case, such as this one, in which defendant has failed to mount any defense or to participate in discovery, thereby increasing the difficulty of ascertaining plaintiff's actual damages." Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1101-02 (N.D. Cal. 2003) (Walker, J.) (noting that there was "little evidence to show plaintiff's actual damages" or the "profits earned by defendant as a result of the infringement of plaintiff's copyright," due in large part to "defendant's failure actively to engage in th[e] litigation"); see also Microsoft Corp. v. McGee, 490 F.Supp.2d 874, 882 (S.D. Ohio 2007) (collecting cases and noting that "[s]everal courts have found statutory damages are [particularly] appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed").

Under 17 U.S.C. § 504(c), the specific amount of the "award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually," is to be "a sum of not less than $750 or more than $30,000 as the court considers just."[3] "The court has *wide discretion* in determining the

---

[3] Here, the Court construes plaintiff's claim as asserting a single act of infringement—namely, the use of plaintiff's proprietary code in developing defendants' website.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 5:15-cv-01701-CAS(KKx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | LIVE FACE ON WEB, LLC, v. AZ METROWAY, INC. ET AL. | | |

amount of statutory damages to be awarded, constrained only by the specified maxima [of $30,000] and minima [of $750]." Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir. 1984) (emphasis added). More specifically, the court should be guided by " 'what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement, and the like.' " Columbia, 259 F.3d at 1195. "[I]t has [further] been said the determination of statutory damages within the applicable limits may turn upon such factors as 'the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of the defendant's conduct, and the infringers' state of mind—whether willful, knowing, or merely innocent.' " 5-14 Nimmer on Copyright § 14.04 (2015) (citation omitted). "[A]s long as the district court acts within the prescribed statutory limits, its discretion will probably be upheld on appeal." Id.

Here, given the fairly high licensing fee that plaintiff appears regularly to charge for the suite of services surrounding its software, and given the substantial length of time that plaintiff's software remained in the source code of defendants' allegedly infringing site, the Court finds it appropriate to award an amount that is commensurate with the statutory damages maximum of $30,000 for non-willful infringement.[4]

---

[4] The Court notes that the fact that the allegedly infringing code—first used in defendants' source code in 2011—remained in use through 2015 does not, in and of itself, give rise to many discrete claims for infringement. In Petrella v. Metro–Goldwyn–Mayer, Inc., ––– U.S. –––, 134 S.Ct. 1962, 1969 (2014), the Supreme Court "specifically distinguish[ed] the separate-accrual rule established in § 507(b) from the 'continuing violation' doctrine." Chicago Bldg. Design, P.C. v. Mongolian House, Inc., 770 F.3d 610, 615 (7th Cir. 2014) (citing Petrella, 134 S.Ct. at 1969). Under the separate accrual rule, "when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs." Petrella, 134 S.Ct. at 1969 (citation omitted). However, the Court in Petrella cautioned that such "[s]eparately accruing harm should not be confused with *harm from past violations that are continuing*." Id. at 1969 n. 6 (emphasis added); compare Klehr v. A.O. Smith Corp., 521 U.S. 179, 190 (1997) (for separately accruing harm, each new act must cause "harm [to the plaintiff] over and above the harm that the earlier acts caused"), with Havens Realty

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 5:15-cv-01701-CAS(KKx) | Date | August 15, 2016 |
| Title | LIVE FACE ON WEB, LLC, v. AZ METROWAY, INC. ET AL. | | |

    **C.**    **Attorneys' Fees**

Local Rule 55-3 determines attorneys' fees for default judgment pursuant to a fixed percentage schedule. C.D. Cal. L.R. 55-3. For a judgment of over $100,000, the schedule of attorneys' fees allows $5,600 plus 2% of the amount of damages awarded over $100,000. Id. Accordingly, under plaintiff's requested damages amount, plaintiff's attorney would be entitled to $10,171.36 in attorneys' fees—that is, $5,600 + $4,571.36 [i.e., 2% of $238,567.95]). Plaintiff also seeks $996.65 in costs, for a total award of: $11,168.01. See Vakil Decl. ¶ 19.

However, because the Court has decided to award an amount commensurate with the statutory damages maximum of $30,000, the schedule of attorneys' fees allows $1200 plus 6% of the amount over $10,000. Accordingly, with a $30,000 damages award, plaintiff's attorney is entitled to $2,400 in attorneys' fees—that is, $1,200 + $1,200 [i.e., 6% of $20,000]. Because plaintiff also seeks $996.65 in costs, the total award of attorneys' fees is $3,396.65.

**IV.**    **CONCLUSION**

In accordance with the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** plaintiff's motion for default judgment against defendants AZ Metroway and Murguia.

---

Corp. v. Coleman, 455 U.S. 363, 380-81 (1982) ( "[W]here a plaintiff . . . challenges . . . an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the limitations period, measured from] the last asserted occurrence of that practice.") (footnote omitted). Thus, in the instant case, to the extent that defendants used the infringing source code in 2011 and allowed the code to remain unchanged as a part of defendants' source code through 2015, any such continued use based on a single act of infringement in 2011 would constitute "harm from [a] past violation[ ] that [was] continuing" through 2015, and not a series of "new wrong[s]" that give rise to "[s]eparately accruing harm" for each month of defendants' allegedly infringing use. Petrella, 134 S.Ct. at 1969 n. 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'  JS-6

| Case No. | 5:15-cv-01701-CAS(KKx) | Date | August 15, 2016 |
|---|---|---|---|
| Title | LIVE FACE ON WEB, LLC, v. AZ METROWAY, INC. ET AL. | | |

    Specifically, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Judgment be entered in favor of plaintiff on all claims, and AZ Metroway and Murguia shall be jointly and severally liable to plaintiff in the amount of $34,393.30 (comprising statutory damages of $30,000, attorney's fees of $3,396.65, and costs of $996.65).

    IT IS FURTHER ORDERED that this court retains jurisdiction over any matter pertaining to this judgment.  Plaintiff's counsel shall submit a Proposed Judgment in accordance with this order, forthwith.

    IT IS SO ORDERED.

|   |   | 00 | : | 00 |
|---|---|---|---|---|
|   | Initials of Preparer |   | CMJ |   |